IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



SHERMAN LAMONT FIELDS
#15651-180
USP TERRE HAUTE
P.O. BOX 33
TERRE HAUTE, INDIANA
            47808

              Plaintiff,                    Civil No. 20-2699 (JEB)

v.                                          AMENDED PETITION


DONALD J. TRUMP
(EX-PRESIDENT/PRIVATE CITIZEN)
ADDRESS UNKNOWN
(FLORIDA (STATE)

          and

JUDGE EDITH JONES AND
THE UNITED STATES COURT OF
APPEALS FOR THE 5th CIRCUIT
F. EDWARD HEBERT
FEDERAL BUILDING
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130


          and

THE SUPREME COURT OF THE
UNITED STATES
1 FIRST ST., N.E.
WASHINGTON, DC 20543

          and

CONGRESS
UNITED STATES CONGRESS
ADDRESS UNKNOWN

          and

PLAINTIF INCORPORATE BY REFERENCE
ALL OF THE DEFENDANTS, BOTH KNOWN
AND UNKNOWN, IN THE ORIGINAL
COMPLAINT.

              Defendants.

AMENDED COMPLAINT FOR INJUNCTIVE,
DECLARATORY, EQUITABLE RELIEF, COMPENSATORY
DAMAGES, ATTORNEY FEES, AND COST OF SUIT
PURSUANT TO BIVENS V. SIX UNKNOWN AGENTS,
403 U.S. 388, 390-97 (1971). FOR VIOLATIONS
OF THE EQUAL PROTECTION CLAUSE, BREACH OF
CONTRACT, AND OTHER VIOLATIONS OF THE
UNITED STATES CONSTITUTION.

I

NATURE OF ACTION

1). The plaintiff incorporate by reference all of the allegations
in the original complaint.

2). This Action is an Amendment to Sherman Lamont Fields v. Donald
J. Trump, et al., Civil Action No. 20-2699(JEB).

3).This Action is brought pursuant to (a) Bivens v. Six Unknown
Agents, 403 U.S. 388, 390-97(1971), for (i) violations and threatened
violations of the Plaintiff's rights to Due Process and Equal Protection
under the Fifth and Fourteenth Amendments to the United States Constitut-
ion; (ii) violations and threatened violations of the Plaintiff's rights
to be free from Cruel and Unusual Punishments under the Eighth Amendment
to the United States Constitution; and (b) violations and threatened
violations of Breach of Contract; and (c). Violating the Constitution
by making themselves Superior to the law.

4). When the Plaintiff filed the Original Complaint he was under a
sentence of Death, since then the Plaintiff's Death Sentence have been
vacated and he is now serving a Life sentence for a " Carjacking "
that he DID NOT commit, unless his conviction is overturned in
another Judicial proceeding Plaintiff will spend the rest of his life
incarcerated; The Plaintiff seek an Order declaring that the
Defendants actions violates the Fifth, Eighth and Fourteenth
Amendments, and Money damages to the tune of One Billion Dollars
( 1,000,000,000 ); or in the Alternative Plaintiff asks for a Jury
trial.

1

5). The United States Constitution protects all American Citizens and allow for redress when a party have breached and/or violated a contract.

6). The United States Constitution protects all American Citizens and allow for redress when a party Neglect their duty to another.

7). The United states Constitution protects all American Citizens Equally, and when the Equal Protection Clause is breached or violated the government must allow for redress of the injured party.

8). The claims in this complaint ( as well as the Original complaint ) are cognizable under Bivens and the Fifth, Eighth and Fourteenth Amendments. This lawsuit is not, and should not be treated as, a successor habeas corpus petition. See Nelson v. Campbell, 541 U.S. 637 (2004). In this Action, the Plaintiff do not challenge the validity of his convictions. Rather, he claim that the 5th Circuit Court of Appeals, The Supreme Court,, Congress and Donald J. Trump Neglected their duty to the Plaintiff, Breached their contract, inflicted cruel and Unusual punishment on the plaintiff, Denied the plaintiff Due Process, and Made themselves Superior to the law, all in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

9). The Plaintiff incorporate by reference all of the Allegations in the Original Complaint. As well as all of the allegations of paragraphs 1-8 herein.

## II.

## PARTIES

10). The Plaintiff Incorporate by reference all of the Parties in the Original Complaint.

11). Defendant Judge Edith Jones and the 5th Circuit Court of Appeals is a Government Agency. They are sued here in their Individual and official capacity for the purpose of obtaining declaratory, injunctive and equitable relief, as well as compensatory/money damages.

12). The Supreme Court of the United States is a Government Agency. They are sued here in their Individual and official capacity for the purpose of obtaining declaratory, injunctive, equitable relief. As well as compensatory/money damages.

13). Congress is a government Agency. They are being sued here in their Individual and official capacity for the purpose of obtaining declaratory, injunctive, equitable relief. As well as Compensatory/ money damages.

14). Donald J. Trump is the ex-president of the united States. He is now a private citizen. He is sued here in his Individual and Official capacity for the purpose of obtaining declaratory, injunctive, equitable relief. As well as compensatory/money damages.

15). The Original Defendants and JOHN DOES is also being sued here in their Individual and Official capacit(ies) for the purpose of obtaing declaratory, injunctive, equitable relief. As well as compensatory/money damages.

16). The defendants are acting, and each of them at all times relevant hereto were acting, in their respective official capacities with respect to all acts described herein, and were in each instance acting under color and Authority of federal law. Upon information and belief, unless preliminarily and permanently enjoined, the defendants, and

3

each of them, intend to act in their official capacities and under the authority of federal law in violation of the Plaintiff's Constitutional and Statutory rights.

17). The Plaintiff Incorporate by reference all of the parties in the Original Complaint. As well as all of the Parties from 10-16 herein.

## III
## JURISDICTION AND VENUE.

18). Plaintiff Incorporate by reference the Jurisdiction and Venue in the Original Complaint.

## IV
## FACTS

19). The Plaintiff Incorporate by reference all the facts and allegations in the Original Complaint. As well as all of the facts and allegations herein.

20). The Fifth Circuit Court of Appeals entered Into a Contract with the American people, including the Plaintiff when said Judges took the Oath of Office.

21). And for years now the Fifth Circuit have Ignored the Law and violated their Oath and the Constitution, harming the American people.

22). On Direct appeal and habeas the 5th Circuit Ignored the law in the Plaintiff's case as laid out herein and willfuly, deliberately, knowingly and Intentionally harmed the Plaintiff.

23). 5th Circuit Judge Edith Jones willfuly, deliberately, intentionally and knowingly discriminated against the Plaintiff on the basis of his race, as laid out herein.

4

24). For years now the Supreme Court have known that the 5th Circuit ignore the law yet they intentionally, deliberately, willfuly and knowingly refused to Supervise the 5th Circuit and propel them to follow the law as laid out herein, and as a direct result the plaintiff was harmed.

25). The Supreme Court failed to provide Plaintiff with the Equal Protection of the law ( after taking the Oath of office that makes a contract binding with the Plaintiff ), and as a direct result the Plaintiff was harmed.

26). Defendants, Donald J. Trump, Congressional Lawmakers, Judge Edith Jones and the 5th Circuit Court of Appeals, The Supreme Court and JOHN DOE(S) all entered into a Contract with the Plaintiff when they took the Oath to Uphold the Constitution, and all Defendant's willfuly, deliberately, knowingly and intentionally Breached and/or violated that contract, as laid out herein.

27). Donald Trump, Congress, the 5th Circuit and the Supreme Court have all made themselves Superior to the law as laid out Supra, in violation of the United States Constitution.

28). Plaintiff Incorporate by reference all of the facts and allegations in the Original petition. As well as all of the facts and allegations herein.

5

THE 5th CIRCUIT COURT OF APPEALS DENIED
PLAINTIFF THE EQUAL PROTECTION OF THE
LAW BECAUSE OF HIS RACE

At or about February 2014 Plaintiff became aware of some racially insensitive remarks made by 5th Circuit Judge Edith Jones during a public lecture entitled " Federal Death Penalty Review " at the University of Pennsylvania School of Law that could/would affect her Judgement in his case, so via his Court appointed Counsel he moved to Recuse Judge Jones from hearing his upcoming § 2255 Habeas Petition. See ( App. 1 ).

Judge Jones reportedly said that " Black people are predisposed to violence "; " Black males are the most violent "; and " No one is innocent they just get off on technicalities." Her racially charged views placed an Unconstitutional   burden on the Plaintiff and came at an Unconstitutionally high price of evident racism. Mr. Fields, whom is black, a black male, and is innocent were squarely within the parameters in Judge Jones' view, violent and guilty even before considering Mr. Fields' Habeas petition. That became even more real when Judge Jones and the 5th Circuit denied Plaintiff's Habeas Petition based on an Unreasonable determination of the facts and the law, equivocating that " Actual Innocence isn't cognizable " in their Circuit, and set Mr. Fields on the path to be terrorized by Donald Trump and William Barr on their last minute Federal Death Row political killing spree. The following is a brief time line of events.

---

1). When the 5th Circuit denied direct appeal Counsel for Plaintiff filed Habeas to the district Court where Plaintiff had Judicial bias issues with the sitting Judge. When Plaintiff finally got a copy of what Counsel filed Mr. Fields immediately informed the Court via a notarized letter that the brief was incomplete; The Court didn't respond.

2). The District Court denied habeas based on an Unreasonable Determination of the facts and the law.

3). Plaintiff then informed the District Court that he would be proceeding to the 5th Circuit pro se; The District Judge responded denying the " pro se Motion ".

6

4). Plaintiff then notified the 5th Circuit that he would be proceeding pro se. The 5th Circuit sent a copy of the Motion to Fields' attorney, Jeff Ellis then returned the original to Fields for his signature.

5). Plaintiff signed the Motion and sent it back with a brief, three volumes of appendix and several Motions showing that he was Actually innocent and his sentence and conviction is the direct result of Fraud, perjury, with a criminal conspiracy being its foundation.

6). Plaintiff attorney responded to the Court stating that Fields' pro se Motion isn't actually a " Pro Se " Motion and Fields only ask to be able to file his brief and Motions.

7). The 5th Circuit denied Fields' Motions to proceed pro se and notified him that they won't consider his brief and Motions.

8). Plaintiff responded to the 5th Circuits denial and asked the Court to allow his brief and Motions to either work in conjunction with whatever counsel intended to file, or to allow his " filings " to stand alone. But the 5th Circuit refused again.

9). Counsel for Plaintiff had yet to file a brief and Fields responded to the 5th Circuit once again stating that he don't want to rely on the unseen brief that counsel intended to file and asked the Court to reconsider. The 5th Circuit responded stating that only Fields' attorney's can file on his behalf.

10). When Plaintiff received a copy of the brief that Counsel filed on his behalf Fields immediately filed a Motion for reconsideration of his pro se filings stating that he " strenuously object " to the brief that counsel filed.

11). About a week later Plaintiff filed another Motion to " Reurge filings ".

12). Shortly thereafter the 5th Circuit entered an Order not to accept " anything " that Fields file.

7

13). Plaintiff filed to the Supreme Court and was told that he would have to wait until the 5th Circuit ruled on his C.O.A. before he could file in the Supreme Court.

14). The 5th Circuit denied C.O.A. based on the brief that counsel filed alleging that Actual Innocence isn't cognizable in their Circuit and falsely claimed that Fields didn't assert issues that he clearly did assert in the brief and Motions that the 5th Circuit refused to let him file pro se.

15). In Buck v. Davis, the Supreme Court held that the 5th Circuit has a " troubling pattern " of denying C.O.A.'s. That holding is even more resounding here in Plaintiff's case where the 5th Circuit used an unreasonable determination of the facts and the law to deny Fields C.O.A. because he's " black ", he's a " black male ", and Fields maintains that he is innocent, everything that Judge Jones believes that makes a man " guilty ".

---

## UNREASONABLE DETERMINATION OF THE FACTS

A). The lady whom Plaintiff said killed the victim, Shalaykea " Lakie " Scroggins wrote two letters expounding upon her obsession for Fields just four months prior to the murder stating, " I lost you to that girl once, I won't let it happen again." And if she were to lose Fields again she would be " killing bitches ".

B). A week before the murder Scroggins accosted the victim at an apartment complex and a " very heated " argument ensued that almost turned physical.

C). The day before the murder Fields and the victim called the phone company together and the victim told them that Scroggins was calling her house threatening her.

D). At trial Scroggins lied and said that she never threatened the victim..

8

E). In denying Plaintiff a C.O.A.  the 5th Circuit adopted Scroggins' false statement although " A-B-C " prove that Scroggins' statement is a lie. In that regard the 5th Circuit  determination of the facts is Unreasonable and it's due to Judge Edith Jones' belief that Fields is guilty because he's " black ", he's a " black male ", and he maintains his innocence.

A-1).  A detective Morris " Bubba " Colyer ( whom isn't a forensics expert ) testified that they didn't find blood in the car that Fields was driving when the victim was killed because " the car looked " detailed " or " wiped down ".

B-1). In denial of a C.O.A. the 5th Circuit falsely claimed that Fields didn't acknowledge Detective Colyer's testimony.

C-1). However Fields did acknowledge it in the brief and Motions that the 5th Circuit refused to let him file.

D-1) Fields also presented the forensics report showing that the car was not clean and the government defrauded the court.

E-) The 5th Circuit said that there were " suspicious stains " that could possibly be blood.

F-1). Yet the forensics report show that the alleged " stain " was tested with TMB solution and it wasn't blood.

G-1) The carpet with the " stain " was also sent to the lab for further testing and that test also proved that it wasn't blood.

H-1) In addition to that the expert that did the testing admitted that even if a vehicle is " detailed " or " wiped down " they have technology that would still find blood.

I-1) In that regard the 5th circuit's determination of the facts is unreasonable and it's due to Judge Jones' belief that Fields is guilty because he's " black ", he's a " black male ", and he maintains his innocence.

A-2)    The lady whom Plaintiff said killed the victim, Shalaykea " Lakie " Scroggins gave several different alibi's for the time of the murder. In her written statement Scroggins claimed that she was at the store " around the corner " from her house buying " something to drink and a box of Black & Mild cigars " when the victim was killed.

B-2) Plaintiff sought to present evidence that the store was closed at that particular time and the prosecutor objected claiming that it was not relevant and the Judge sustained the objection without even a query.

C-2). In denying Plaintiff a C.O.A. the 5th Circuit held that " the prosecution's objections were not baseless."

D-2) However Scroggins' alibi was absolutely relevant and the prosecutor objecting and claiming that it wasn't relevant in order to keep the jury from hearing the truth renders it baseless.

E-2) Also in closing the prosecutor bragged to the jury that he was making " baseless objections " in Order to make Fields upset. In that regard the 5th Circuit's determination of the facts is unreasonable and it's due to Judge Jones' belief that Fields is guilty because he's " black ", he's a " black male ", and he maintains his innocence.

---

A-3). Edward Lee " Treyboy " Outley, the guy that Plaintiff said helped Scroggins kill the victim wrote his friend Christian " Chae " Walker a letter telling Walker to lie and say that he gave him ( Outley ) a gun " to give to Fields ".

B-3). Walker, whom has an IQ that's well below average admitted that he " didn't know what kind of gun it was until Detective Morris " Bubba " Colyer told him.

C-3). The 5th Circuit, in contradiction of the facts claimed that " there is no indication of coaching."

---

10

A-4). Edward Lee " Treyboy " Outley wrote a letter to Fields' attorney pre-trial stating that he didn't give Fields a gun and the prosecutor wanted him to lie and say that he did.

B-4) When Outley testified at trial that he gave Fields the alleged murder weapon Fields' attorney, for the first time told Fields about the letter and gave it to him so he could Impeach Outley with it.

C-4) The prosecutor objected and asked to see the letter so Fields' attorney gave the prosecutor a copy of it.

D-4) On re-direct the prosecutor (coached) Outley via a leading question, stating: " Who wanted you to write this letter ?"
    Outley responded " Fields;"   even though Fields nor the prosecutor knew that the letter existed until Fields' lawyer presented it.

E-4) The prosecutor  knew that was a lie because Outley had also wrote them numerous letters stating that he didn't give Fields a gun.

F-4). Thus the 5th Circuit's determination of the facts is unreasonable and it's due to Judge Edith Jones belief that Fields is guilty because he's " Black ", he's a " Black male ", and he maintains his innocence.

---

A-5). The victim's body was found in a rural area in thorn bushes that ran " two inches long." Investigators testified that the thorns cut them and tore up the sheet as they removed the body.

B-5). It's undisputed that Fields was wearing " Green jail pants that was cut off into shorts " on the night Coleman was killed, so if Fields would have killed Coleman and drug her body up in them thorn bushes the thorns would have cut his legs.  .

C-5) Fields pointed this out on Habeas.

D-5) The 5th Circuit said that Fields could have been cut and his legs healed by the time he was arrested 18-days later.

11

E-5). However, courts shouldn't engage in speculation while ignoring the physical evidence. If Fields would have killed Coleman his blood, where the thorns would have cut him would have been found in the car that Fields was driving. Forensics proved that that was not the case, there was no blood in the car that Fields was driving.

---

A-6). Shalaykea " Lakie " Scroggins said that Fields told her that he killed Coleman and he got " blood all in the car."

B-6). Forensics proved that there was no blood in the car.

C-6). Scroggins went on to say that after Coleman's murder ahe was at the New road Inn motel with Fields and he had " Blood on his clothes, and so much blood on his shoes that it looked like mud." She said that she put the clothes and shoes in a bag and left them in the trash can in the motel room.

D-6). The next morning law Enforcement converged on the motel room ( which has a carpeted floor ) and did a thorough forensics search of the room and " took everything in the room "; Forensics showed that there was no blood.

---

A-7) Scroggins and Outley was in a GOLD JAGUAR when Coleman was murdered, if they killed Coleman then their blood would have been found in the Jaguar from where the thorns at the crime scene would have cut them. The victim's blood would have been found in the Jaguar as well from her wounds.

B-7). However, the GOLD JAGUAR was never tested because Scroggins and Outley hid the car; They both lied to investigators and said that the Jaguar was BLUE.

C-7) Two years later, right before trial government investigators found the owner of the Jaguar and he told them that on the night of the murder he rented Outley his GOLD JAGUAR.

12

D-7). Even knowing this, the prosecution still defrauded the jury telling them that Outley and Scroggins was indeed in a BLUE JAGUAR; Yet the prosecutor knew that the BLUE Jaguar had been totaled years prior to the murder and didn't even exist at the time of the murder.

---

A-8). At trial Fields asked Outley did the government make him any promises and Outley lied and said no. The prosecutor knew Outley was lying and didn't correct him.

B-8). In denial of a C.O.A. the 5th Circuit said that " It is unclear whether Outley understood the general question posed to him."

C-8). However the evidence show that Outley did indeed understand the question. Outley wrote a letter stating that he could have got 5K1, which in fact is the governments promise of leniency/immunity/time reduction. That letter is what spurred the question about the government making Outley any promises.

D-8). The 5th Circuit adopted the District Judges' false claim that Fields " did not follow up with the question " when in fact he did follow up and Outley answered explaining what 5k1 is.

E-8). The letter where Outley said that he could have got 5k1 and Fields' questions and Outley's answers about 5K1 clearly show that Outley did indeed understand that Fields was asking him if he'd received a deal for his testimony. But most importantly the prosecutors knew what Fields was asking Outley and they had a duty under Napue v. Illinois to correct Outley and they chose not to.

---

A-9). There was no evidence linking Fields to Coleman's murder, as one would expect from an innocent person.

B-9). Before the government had any witnesses Fields was notified that the government was " seeking jailhouse testimony."

C-9). Two years later in May 2003 the government told the defense that they would have to set the August trial off because they went back, searched the victims clothes and found a hair; They served a search warrant and took hair samples from Fields.

D-9) Shortly  thereafter the government announced that they " got a match."

E-9). Fields protested, telling his lawyers that the government was lying, so Fields lawyers petitioned the Court to allow for an independent examination. The independent examination revealed that it was an African American hair BUT IT WAS NOT FIELDS.

F-(). The defense informed the prosecution of the independent results and the prosecutor said that they weren't going to use the hair anyway, now they had several inmates that were going to testify that Fields confessed to them.

G-9). Fields was a segregated inmate in a cell all alone; the cell was right by the officer's desk so the officer's could watch him constantly. There was also an observation sheet on Fields' door that the officer's had to write down everything Fields said or did every fifteen minutes; There is no way Fields could have confessed to those crooks without the officer(s) hearing it.

H-9). In denying Fields a C.O.A. the 5th Circuit claimed that Fields couldn't show that false evidence was used against him, and denied him an evidentiary hearing so he couldn't prove it.

---

## FALSE EVIDENCE THAT FIELDS COULD PROVE

A-10) Fields could show that Scroggins WAS NOT at the store when Coleman was murdered.

B-10). Fields could show that Outley and Scroggins was in a GOLD JAGUAR when Coleman was killed and they intentionally and deliberately hid the car by claiming that it was BLUE.

C-10). Scroggins claimed that Fields confessed to her via a phone call at 8:00 P.M. on November 15, 2001 and told her details about the murder that only the killer would know. Fields presented the phone records showing that the call don't exist. Fields could prove that

14

when the prosecutor defrauded the jury by telling them that the phone records don't show the call because " phone records only show calls to and from cell phones " is a blatant lie.

---

A-11). Edward Outley's friend, Christian " Chae " Walker gave two written statements and testified in the Grand Jury that Fields never confessed to him.

B-11). Two years later at trial, after Walker started talking with Outley and Scroggins Walker changed his story and testified that Fields did confess to him.

C-11). In closing arguments the prosecutor said to the jury: " Do you know what Chae Walker got for changing his story? Chae Walker got a perjury charge." That was a blatant lie, Walker was never charged with perjury for changing his story.

---

A-12). Two months before trial and two years after Coleman's murder, a Kevin Burton contacted the prosecution while he was in Three Rivers Federal Prison with Christian " Chae " Walker, Burton alleged that on November 16, 2001 Fields confessed to him at a drug house.

B-12). Burton claimed that he " met " Fields in 1991 but never seen him again until the day of the alleged confession. ( Fields maintains that he don't know Burton and had never seen him before.)

C-12). Burton's story was that Fields was bragging about killing Coleman ( Burton said that Coleman and he went to school together ). Burton claimed that when Fields was bragging about killing Coleman Fields was in a 4-door red Grand Am and Outley was " in a Jaguar."

D-12). The government knew that Burton was lying because the Grand Am and/or the Jaguar was no longer in the picture after the night of the murder. Also the grand Am was a 2-door not a 4-door,

and the car went to the forensics lab on the 14th. And there is no way he could have seen Outley in a " Jaguar " because Outley went to jail on the 13th.

E-12). The government also knew that Burton was lying because Burton claimed that Fields " Kidnapped " Coleman from the hospital. However it's an established fact that Coleman left the hospital with Fields willingly to go to the motel.

---

A-13). A hispanic inmate named Homero Deleon wrote the prosecutor and said that " when " he was in segregation with Fields, Fields told him, " I'm going to confess to you since you're not on the goverments witness list to testify."

B-13). Deleon said that he asked Fields did he kill Coleman and Fields said " Yeah I killed the bitch. " Deleon also said that Fields told him that he raped Coleman.

C-13) The government knew that Deleon was lying because the governments own expert said that " there was no signs of sexual assault ", and when Deleon claim that the confession took place there was no witness list.

D-13). Fields don't know Deleon and had never seen him before until the government put him on the witness stand to lie. Deleon also admits that he don't know Fields, but claim that he saw Fields at a store in May or June of 2000. On cross examination when Fields revealed that he was in State prison in May and June 2000 Deleon said: " That must not have been you then."

E-13). In order to bolster Deleon's false testimony the prosecutor put ATF Agent Douglas Kunze on the stand to lie; Kunze claimed that he gave the defense the Grand jury transcripts " early on in the investigation." Yet that was a lie Fields' attorney's was still asking the government for the grand jury material even after Deleon claimed that the confession took place.

16

F-13). In Deleon's letter to the prosecutor he shows his willingness to lie stating, " I testified against both of my codefendants and they were both convicted so if you want me to testify against Fields I'm willing."

---

A-14). An inmate Jerry Reed claimed that Fields confessed to him in segregation. ( And just like Burton and Deleon, Fields didn't know Jerry Reed ).

B-14). Reed claimed that he was in a cell across the hall from Fields and he told Fields that he was from Waco and Fields said, " I'm Sherman Fields, I'm the one that killed my girl."

C-14). Reed said that Fields told him that when he escaped from jail his " codefendant " gave him a ride away from the jail."

D-14). The government knew Reed was lying because they knew that Fields didn't get a ride away from the jail, he ran the few blocks to Outley's apartment.

E-14). Reed said that Fields told him that he and Outley met up with Chae Walker where they got guns that night.

F-14). The government knew Reed was lying because they know that Fields didn't see Chae Walker until at least a week after Coleman's murder.

G-14) The " Chae Walker " reference should have been a notable sign that Reed had obtained his information elsewhere and came forward to get the governments " jailhouse testimony " seeking deal, However at trial Reed was forced to admit that right before he " came forward " he and  Chae Walker were cell mates at the Federal jail; Reed also knew Edward Lee " Treyboy " Outley.

H-14). Officers in segregation admit that Fields DID NOT talk to nobody but an elderly gentlemen and all they ever talked about was food.

17

The officers also admit that if Fields would have confessed to anyone like the inmates claim then they and everyone else would have heard it.

---

A-15). A white supremacist named John Allen Mercer, whom was in jail for sexual assault on a child said that he was in the cell next door to Fields and  " because there was no TV's or Newspapers in segregation he and Fields would talk."

B-15). John Mercer was in the protective custody part of segregation where there are TV's, they only moved him to displinary segregation when they brought Fields to jail. And there are Newspapers in segregation.

C-15). Mercer said that Fields " got Coleman from the hospital, took her out and busted a cap on her because she was supposed to be having an affair." ( That information reflects the Dec. 12, 2001 Waco Tribune Herald.)

D-15). Mercer said that Fields had a key and went down the fire escape. ( That information reflect the Nov. 27, 2001 Waco Tribune Herald ).

E-15) Mercer said that Coleman was shot with either a .22 or a 9-millimeter. ( The government knew that was a lie ).

F-15). Mercer said that Fields told him that he carjacked a woman. However on cross examination at trial Mercer changed his story, he said that Fields wasn't talking to him he heard Fields confessing to a Little D and a Little Mike. ( Yet there was no " Little D " or " Little Mike " to confirm or deny his lie ).

G-15. Also before Mercer claimed that Fields confessed mercer was in segregation with Shalaykea " Lakie " Scroggins and guards wrote up

18

statements saying that Scroggins was telling everyone details about the murder and claiming that Fields did it.

---

A-16). On the night that Fields walked away from the jail the guys that were in the cell with Fields were separated and questioned.

B-16). Dominique Tubbs and Chris Quigley were friends from Calvert, Texas that came to jail under the same secret indictment; they both admitted that they didn't get along with Fields, telling investigators that Fields " was a bully ". But they could provide no useable information otherwise.

C-16). The next day U.S. Marshals flew to Waco from Austin, Texas and re-interviewed Tubbs and Quigley; Again they could provide no useable information.

D-16). On November 13, 2001 local homicide detective Steve January talked to Edward Lee " Treyboy " Outley. ( Detective January wasn't working on Coleman's case, he had arrested Fields a few times in the past and he claimed that he came on  to assist the Marshals in the city limits although they were already being assisted by sheriff deputies.)

E-16). But for some reason, after talking to Outley, Steve January went out to the jail to " re-interview " Tubbs and Quigley; This time he managed to do what the original investigators and the U.S. Marshals failed to do, January  walked away with statements that he wrote himself and Tubbs and Quigley signed claiming that they heard Fields " threaten Coleman on the phone."

G-16). Tubbs lied and said that he didn't know that Coleman was dead " Until he read it in the newspaper "

H-16). The government latched on to that saying, " They gave the statements saying that Fields was going to kill her even before the body was found."

19

I-16). However, Tubbs' Friend, Chris Quigley admits that " a police officer told him and Tubbs " that Coleman was deceased while Fields was " still free ".

J-16). The only police officer that they talked to was Detective Steve January, the one that wrote the statements for them AFTER Outley had told him that Coleman was deceased on November 13th. ( The newspaper article confirming Coleman's death is December 12, 2001, and Fields was no longer " free ". )

_____

A-17). On November 15, 2001 a Tammy Edwards alleged that her car was jacked by an " unknown black male ".

B-17). After a suggestive identification where a police officer and a security guard showed her a single picture of Fields she "identified " Fields.

C-17). Tammy Edwards said that as she got out of her car at Hillcrest Hospital the black male approached her and told her to get back in the car. She said that she struggled with him, yelling and screaming for help the whole time until she broke away and ran. She said the black male got in her car and drove away.

D-17). Two years later as she sued Civigenics, the company over the jail that Fields walked away from Tammy Edwards said in her deposition that she " knew it was Fields the moment she saw him because there were fliers of him up all around the hospital." ( If that was true then she would have said that on the day of the alleged carjacking ).

E-17). And for the first time, in her deposition she said " oh he shot at me too " as she ran away.

F-17). This supposedly happened at shift change at a major hospital with people coming and going and there's a struggle, yelling and screaming and a gunshot, yet no one saw or heard anything, but Tammy Edwards; Impossible!

20

G-17). It was revealed that Tammy Edwards was married to her childhood sweetheart and the father of her son, a guy named Darryl Edwards, Mr. Edwards robbed an elderly couple and murdered the woman, he pled guilty to a Life sentence to avoid the death penalty.

H-17). However Tammy Edwards was in a relationship with a guy named " Chris ", whom she claimed that she didn't know his last name and became beligerent when the attorney pressed her on it. ( However it's believed that the " Chris " is Christian Chae Walker, Edward Lee Outley's friend, the one that Outley told to lie and say that he gave him a gun for Fields.)

I-17). At trial as Fields informed the jury that Tammy Edwards first said that he car was took by an " Unknown black male " the prosecutor objected and defrauded the jury stating, " She never said that, the only person that said that is Fields."

J-17). The prosecutor called detective Steve January to the stand to further defraud the jury, the prosecutor led Detective January to say that " there were no fingerprints or nothing, this thing was clean." ( That was the same argument that they used to defraud the jury with Detective " Bubba " Colyer in regards to the Grand am, when in fact neither car was clean according to the forensics reports. In the alleged carjacking vehicle there were eleven latent prints, all of AFIS quality and they had checked the prints against Fields prints and there was no match. The prosecutor knew that when he procured Detective January to lie, however the jury never knew that there were fingerprints....and they don't match Fields.)

---

A-18). If the 5th Circuit had given Fields an evidentiary hearing like the law dictates instead of just ruling that Fields couldn't show that false evidence was used against him Fields could have shown the multiple and unprecedented lies.

B-18). There are also pre and post forensic photo's on file that will show that the car was NOT CLEAN. ( The Grand Am ) Fields filed a Brady claim for the pictures and the government responded defrauding the

21

Court again stating, " there are no photo's, that's just conjecture on Fields' behalf.".

C-18). However the governments own forensics report state that there are 35-mm film on file.

----

A-19). When the prosedutor took the case to the Grand jury the prosecutor procured Sheriff Detective Johnny Spillman and U.S. Marshal Chris Casson to lie and defraud the Grand jury. Spillman testified that when Fields came into contact with the victim on the night of the murder Fields " became Irate "., Chris Casson testilied that Tanesha Hilliard, the victim's cousin, whom was there, said that Fields " became angry ".

B-19). The prosecutor knew that Spillman and Casson was lying because Tanesha Hilliard had always maintained that Fields was never mad or angry, and as a matter of fact he and the victim were " hugging and kissing."

----

A-20). Due to the aforementioned the evidence is clear that the only way the 5th Circuit could have concluded that Fields couldn't show that false evidence was used against him and denied Fields' appeals based on an unreasonable determination of the facts and the law is if the Court allowed Judge Edith Jones' bias to pervade and influence their decision.

----

" The Supreme Court has held that   actual bias and the appearance of bias violate due process principles." Bracy v. Schoming, 286 F.3d at 410-11; See Bracy, 520 U.S. at 905 (Actual bias ). " Absent a "smoking gun"  a petitioner may rely on circumstantial evidence to prove the necessary bias." Bracy, 286 F.3d at 411-12; Id. at 422

( Posner, J., concurring in part; dissenting in part). The Court holding that Fields couldn't show that false evidence was used against him while denying him the necessary evidentiary hearing amid an overabundance of false evidence is a finding of fact that is clearly erroneous. Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 262 F.3d 1304, 1309 (11th Cir. 2001). Judge Jones' and the 5th Circuits bias is glaring, Fields have no choice over what race and/or gender he is, he was born a black male, that's not a crime....anymore, slavery was supposed to end decades ago. " The law cannot directly or indirectly give Judge Jones' personal bias effect." Palmore v. Sidoti, 466 U.S. 429, 433, 80 L.Ed. 2d 421, 104 S.Ct. 1879 (1984). " the Fourteenth Amendment views racial bigotry as an evil to be stamped out, not as an excuse for perpetual racial tinkering." See DeFunis v. Odegaard, 416 U.S. 312, 342, 94 S.Ct. 1704, 40 L.Ed. 2d 164 , (1974)(Douglas J., dissenting ). The 5th Circuit's opinion only serve to highlight Judge Jones' racial bias, their " troubling pattern " of denying C.O.A.'s, Buck v. Davis 137 S.Ct. 759, 777 (2017) is front and center here in Fields, it's reflected in Judge Jones' bias that " Black people are predisposed to violence ", " Black males are the most violent ", and " No one is innocent ". The 5th Circuit has been executing their racial bias for far too long, their inclination here in Fields' case to lend false credence to the prosecution's case prove that their racial and other discrimination is not benign. " benign carries with it no independent meaning, but reflects only acceptance of the current generations conclusions that a politically acceptable burden imposed on particular citizens on the basis of race is acceptable." See Metro Broadcasting, Inc. v. FCC, 497 U.S. 547, 609, 110 S.Ct. 2997, 111 L.Ed. 2d 445 (1990) (O'Connor, J., dissenting ). " It is for this reason that the Supreme Court has repeatedly held that strict scrutiny applies to all racial classifications regardless of whether the government has benevolent motives." See e.g., Johnson, 543 U.S., at 505, 125 S.Ct. 1141, 160 L.Ed. 2d 949 , ( " We have insisted on strict scrutiny in every context, even for so-called "benign" racial classifications.") Adarand, 515 U.S. at 227, 115 S.Ct. 1097, 132 L.Ed. 2d 158; Judge Jones' bias is undeniable.

THE 5TH CIRCUIT'S REFUSAL AND/OR
FAILURE TO FOLLOW THE LAW HARMED
PLAINTIFF

A-21)  Gideon v. Wainwright, 312 U.S. 335 (1963) " The U.S.
Constitution requires the assistance of counsel in all prosecutions."

B-21). Plaintiff was in jail for being a felon in possession of a
firearm when he offered a jailor $5,000 for a key to the fire escape
door, and on November 6, 2001 he walked away from the jail when the
prosecution refused to dismiss the charges.

C-21). After plaintiff was re-arrested and he was in jail again
Counsel for Plaintiff implored Fields to plead guilty to the felon in
possession charges, after Fields repeatedly complained about the
jailors assaulting him, calling him " The Green Mile " and writing
bogus disciplinary cases.

D-21) Counsel told Fields to plead guilty to the felon in possession
charges and he would have him sent off to prison away from the abuse.
Counsel said, " Since it's all one indictment the max is ten years,"
and if Plaintiff were to plead guilty " the murder and other charges might
just go away."

E-21). Plaintiff pled guilty and when the Court sentenced
Plaintiff to 12½ years, Counsel first said: " I've never seen the
Judge jump off the chart like that." Then he said that he
" misinterpreted the law."

F-21).  Plaintiff wanted to  appeal but Counsel refused so
Plaintiff wrote the 5th Circuit and explained that he was coerced
into pleading guilty; The 5th Circuit gave Plaintiff a time line to
appeal.

G-21). Plaintiff knew nothing about the law, nor did he have
access to a law library, so he wrote the Judge and asked him to
appoint him counsel to appeal.

24

H-21). It was at this time that Counsel filed an ANDERS BRIEF, and then withdrew from that particular case.

I-21). Plaintiff eventually wrote a letter to the Judge asking could he proceed pro se in the upcoming Capital trial because the lawyer wouldn't withdraw from that case.

J-21). But Plaintiff elected to keep counsel because Plaintiff didn't know the law and couldn't represent himself.

K-21). A week before trial Counsel came to visit the Plaintiff and at the end of that visit he asked Fields to sign a form; When Fields asked what it was for Counsel informed Fields that he was once a prosecutor and he had prosecuted Fields before. Fields refused to sign the form and wrote the Judge asking for new attorney's.

L-21). The Judge asked Fields about the request for new attorney's on the eve of trial, the Judge said he wasn't appointing Fields new Counsel and vouched for the attorney's when Fields accused them of working with the prosecution.

M-21). The Judge told Fields that he have a right to represent himself even though Fields had asked for new attorney's, not self representation.

N-21). Right before trial Fields tried to get out of representing himself again stating, " Your Honor, I can't do this, I'm not learned in the law and if you don't appoint me new counsel you'll be forcing me to represent myself."

O-21). The Judges' position was clear: Take the lawyer that coerced Fields to plead to the felon in possession charge and then abandoned him when he wanted to appeal, or represent himself; Fields represented himself.

P-21). At another point during the trial as Fields struggled to contain the governments pollution of lies Fields tried to explain the conflict  between him and his lawyers, but the Judge didn't want to hear it stating: " That's not my business." And when Fields asked the Judge wasn't it his business at the beginning the Judge said, " No."

25

Q-21). Despite the fact that Fields said he couldn't represent himself, the Judge was forcing him to proceed pro se and the Judge said that the conflict was not his business the 5th Circuit ignored the law ruling that the Plaintiff " voluntarily represented himself."

R-21).   In Simmons v. United States, 340 U.S. 377, 394 (1968) the Court held that ( " [W]e find it intolerable that one Constitutional right should have to be surrendered in order to assert another.") Yet that's the position that Fields was put in; The 5th Circuit's failure to follow the law and reverse Plaintiff's conviction and Death sentence for being FORCED to proceed Pro Se harmed Plaintiff.

---

A-22). 28 U.S.C. § 455(A) " A Judge must recuse himself " in any proceeding in which [the Judge] impartiality might be reasonably questioned, or 28 U.S.C. § 455(b)(1) " If the Judge has a personal bias or prejudice concerning a party..."

B-22). Six months prior to Fields' trial in Andrade v. Chojnacki, 388 F.3d 448 (July 14, 2003), District Judge Walter Smith, Jr. refused to participate in an investigation where his good friend, prosecuting attorney, William " Bill " Johnston was under investigation for withholding evidence in the Andrade case. When Judge Smith presided over Fields' case in January 2004 William " Bill " Johnston was in private practice and he was the attorney for the victim's family in the United States v. Fields, where he had an interest in the outcome of this case.

C-22). In Order to help his friend, William " Bill " Johnston meet his end result Judge Smith did any and everything he could to bring about Fields' conviction, to include, but is not limited to forcing Fields to proceed Pro Se; In that regard Judge Smith should have recused himself.

D-22) And as laid out Supra, 5th Circuit Judge Edith Jones should have recused herself.

26

A-23). Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) " the government must disclose material, exculpatory evidence to a criminal defendant."

B-23). Prior to trial Counsel for Fields filed a Motion for Discovery pursuant to Rule 16 and was supposedly given " Open file discovery." The Motion specifically requests the timely disclosure of Photographs, documents, tangible objects, results of reports or scientific tests or experiments, and disclosure of written summaries of testimony of expert witnesses."

C-23) The prosecution never turned over the pre and post forensic photo's that would have proven that Detective Morris " Bubba " Colyer lied when he defrauded the jury into believing that the Grand am was " clean." The prosecution also never turned over the written summary of Detective Morris " Bubba " Colyer's " expert testimony ", or the written summary of Detective Steve January's " expert testimony ", effectively suppressing and/or withholding the evidence; Thus the first prong of Brady have been satisfied.

D-23). The second prong of Brady is just as clear: The photographs is favorable to the defense because the evidence is exculpatory and impeaching. The photo's prove unequivocally that Detective Morris Bubba Colyer lied and defrauded the Court via the prosecution when he said that they didn't find no blood in the car that Fields was driving because the car " looked detailed " or " wiped down." But most importantly, the jury, during deliberations  at the guilt/innocence phase only had one question; They wanted the " testimony (or evidence, if it's available)  of the results of DNA testing on the car.
    Judge Walter Smith denied the jurors request telling the jury that they would have to " remember the testimony."
If the jury would have remembered and/or knew the testimony in regards to the forensics testing and the state or condition of the vehicle they wouldn't have been requesting the information; Thus the jury had nothing to rely on. If the prosecution would have honored their duty to disclose then Fields would have impeached Detective Colyer's willfuly false testimony with the photographs and the photo's

27

would have been in evidence for the jury to use in their deliberations and Fields would have been exonerated. There is no doubt that the photo's is favorable.

E-23). The prosecution should have turned over the written summary of Detective Morris " Bubba " Colyer's " expert testimony " because the evidence is exculpatory and impeaching. If Fields would have known that the government was going to call Detective Colyer to the stand to lie and say that they didn't find blood in the car because the car " looked detailed " or " wiped down "; Had the government honored their duty to disclose Fields would have procured his own expert to counter Detective Colyer's willfuly false testimony, and the jury's sole question would have been answered in Fields' favor and Fields would have been exonerated.

F-23). The prosecution should have turned over the written summary of Detective Steve January's " expert testimony " because the evidence is exculpatory and impeaching. If Fields would have known that the government was going to call Detective January to the stand to lie and say that the alleged carjacking vehicle was clean and " there was no fingerprints or nothing "; Had the government honored their duty to disclose, Fields would have been ready to impeach Detective January's false testimony with the forensics report showing that the car WAS NOT clean, and there were eleven latent prints that don't match Fields.

G-23) There is no doubt that the disclosure of Detective Colyer and Detective January's " expert testimony " is favorable because both Detective would have had to reveal their expert qualifications and neither one of them are experts in the fields that they testified to.

H-23). The third prong of Brady is met as well. " Testimony is material if it was designed to substantially affect the outcome of the case. United States v. Como, 53 F.3d 87, 90 (5th Cir. 1995). Detective Colyer's false testimony about the car being "clean" and Detective January's false testimony that there are no " fingerprints " was definitely designed to substantially affect the outcome of the case; the governments entire case was " Judas testimony ", crooks that the government paid to lie, the forensics from the Grand am and the finger-

28

prints from the alleged carjacking vehicle was the only physical evidence, and that physical evidence exonerates Fields; Thus it was definitely material.

I-23) In Hinton v. Alabama, 188 L.Ed. 2d 1,__U.S.__, the Court found that, " Prosecution experts, of course, can sometimes make " mistakes ". Indeed, we have recognized the threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution forensics experts, noting that " [S]erious deficiencies have been found in the forensic evidence used in criminal trials...One study of cases which exonerating evidence resulted in the overturning of criminal convictions concluded that invalid forensics testing contributed to the convictions in 60% of the cases." Melendez-Diaz v. Massachussetts, 557 U.S. 305, 319, 129 S.Ct. 2527, 174 L.Ed. 2d 314 (2009) (citing Garret & Neufeld, Invalid Forensic Science Testimony and wrongful convictions. 95 Va. L. Rev. 1, 14 (2009).

J-23) The 5th Circuits refusal to accept Fields' timely pro se brief and Motions contributed to the Court ignoring the law.

---

A-24). Price v. Johnson, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), " A prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate Court " foreclosed any right of a pro se defendant to act pro se. But this did not foreclose the right of a defendant to present a pro se brief. In Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir. 1984), cert. denied, 470 U?S. 1008, 84 L.Ed. 2d 387, 105 S.Ct. 1368 (1985), the Chamberlain Court, quoting the above styled language from Price v. Johnson, found that a criminal defendant does have the right under the Constitution to present pro se briefs or motions on appeal."

B-24). The 5th Circuit's refusal to allow Fields to file his timely pro se brief and Motions is on par with the Court's reputation for ignoring the law.

---

A-25). Napue v. Illinois, 360 U.S. 264, 269, 3L. Ed. 2d 1217, 79

29

S.Ct. 1173 (1959) " First it is established that a conviction obtained through the use of false evidence, known to be such by representatives of the government, must fail under the Fourteenth Amendment; The same result obtains when the state, although not soliciting false evidence, allows it to go uncorrected.

## MULTIPLE INCIDENTS OF FALSE EVIDENCE

* Detective January- No fingerprints
* Detective Collier- The Grand Am was clean
*  Prosecutor- Phone records only show calls to cell phones
* Prosecutor- Outley and Scroggins was in a BLUE JAGUAR
* Prosecutor- Tammy Edwards never said her car was took by an unknown black male.
* Prosecutor- Christian "Chae" Walker got a perjury charge.
* Edward Lee "Treyboy" Outley- The government didn't make me no promises.
* U.S. Marshal Chris Casson- Tanesha Hilliard said that Fields became Angry when he came into contact with the victim.

* Detective Johnny Spillman- Said that Fields became Irate when he came into contact with the victim.

* John Mercer-  saying the victim was shot with a 9-millimeter or a .22.
* Shalaykea "Lakie" Scroggins- Was at the store when the victim was murdered.
* Scroggins- Fields called her at 8:00 p.m. November 15, 2001 and told her the details of the murder.
* Kevin Burton- Fields confessed to him on November 16, 2001 and he was driving a 4-door red Grand Am and Outley was " in a Jaguar."

* Kevin Burton- Fields kidnapped Coleman.

* Dominique Tubbs- Didn't know that Coleman was deceased until he read it in the paper.

B-25). This barely scratches the surface of the false evidence used to convict Fields, however it proves undoubtedly that the 5th Circuit ignored the law once again when denying Fields' appeals.

---

A-26). L.Ed. Digest: CIVIL RIGHTS § 32 " Perjury before a Grand Jury, like perjury at trial, is a serious criminal offense. See 18 U.S.C. § 1623(a). " If an indictment was procured on knowingly false testimony, it would not support a finding of probable cause." Perry v. Brooks, 175 Ga. App. 77, 332 S.E. 2d 375 (1985).

B-26). When the government sought to indict Fields for Coleman's murder the Grand Jury, at one point said that they didn't believe the governments Star witness Shalaykea " Lakie " Scroggins.

C-26). The government procured Detective Johnny Spillman to lie and say that Fields became " Irate " when he came into contact with the victim.

D-26). The government procured U.S. Marshal Chris Casson to lie and say that Tanesha Hilliard said that Fields became Angry.

E-26). Tanesha Hilliard, whom is the victims cousin, and was present at the hospital with Fields and Coleman have always maintained that Fields was never angry, and as a matter of fact Fields and Coleman were hugging and kissing.

F-26). With the Grand Jury doubting Scroggins testimony, had the government not procured Detective Spillman and U.S. Marshal Casson to lie Fields wouldn't have been indicted.

G-26). The 5th Circuit ignored the law when they refused to accept Fields' timely pro se brief and Motions and it contributed to the Court ignoring the law on this Grand Jury issue.

---

A-27). In re Davis, No. CV-409-130 (8/24/10) " The substantial risk of putting an innocent man to death clearly provides an adequate

justification for holding an evidentiary hearing."

B-27). The overwhelming evidence that Fields was framed for Coleman's murder and Carjacking and he's Actually innocent warranted an evidentiary hearing, yet the 5th Circuit ignored the law.

---

A-28). United States v. Hasson, 333 F.3d at 1270-71 (" A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts...reasonably calculated to deceive..." (citing Neder v. United States, 527 U.S.1, 25, 119 S.Ct. 1827, 1841, 144 L.Ed. 2d 35 , (1999)); Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir. 2000)( " Intent to defraud need not be shown through active misrepresentation-material omissions can be fraudulent if they are intended to create a false impression.")

B-28). The Fraud in Fields' case, as laid out Supra warranted a finding of Fraud on the Court, yet the 5th Circuit ignored the law once again.

---

A-29). Chicago Tribune Co. v. Bridgestone/Firestone Inc., 263 F.3d 1304, 1309 (11th Cir. 2001) " A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making          the determination, or make findings of fact that are clearly erroneous."

B-29). The District Court's conclusion that no false evidence was used against Fields is a finding of fact that is clearly erroneous; The District Court, giving false substance to false testimony is clearly erroneous; the many instances of unreasonable determination of fact is clearly erroneous; The 5th Circuit once again ignored the law.

A-30). The 5th Circuit decision  to ignore the law and deny Fields' appeals was arbitrary because it was made without a rational

32

connection between the known facts and the decision or between the found facts and the evidence. There is no clear evidence, even if disputable to support the 5th Circuits denial of Fields' appeals.

33

THE SUPREME COURT'S REFUSAL TO SUPERVISE
THE 5TH CIRCUIT AND PROPEL THEM TO FOLLOW
THE LAW WHILE KNOWING THAT THE COURT IS A
ROGUE CIRCUIT HARMED PLAINTIFF.

A-31). For years now the Supreme Court know and have known that the 5th Circuit have gone rogue and often ignore the law.

* Bruce Alpert, " Latest Reversal Par for the Court; 5th Cir. Rulings often struck down, TIMES-PICAYUNE ( New Orleans ), June 27, 2005, at 1;"

* Adam Liptak & Ralph Blumenthal, " Death sentences in Texas cases try Supreme Court's patience, N.Y. Times, Dec. 5, 2004. at 1";

* Harvey Rice, 5th Circuit Court Rules in its own way; It's Decisions have a History of defying the Supreme Court, Houston, CHRONICLE, July 5, 2005, at B1.

* Neil S. Siegel, Op-Ed., " Why President Bush should not take the 5th; Judges who ignore Law are possible Court candidates; HOUSTON, CHRONICLE, June 17, 2005, AT B11.

B-31). In 2003 the Supreme Court lambasted the 5th Circuit for rejecting an appeal by THOMAS MILLER-EL.

C-31). In defiance the 5th Circuit came back with a new opinion in the Miller-El case that ignored a majority ruling spelling out how the 5th Circuit should Rule. That instance convinced many that the 5th Circuit was openly defying the Supreme Court; Even so, the Supreme Court has not took the necessary steps to supervise the rogue Court, the Supreme Court said that the 5th Circuit " blinks reality " but that's as far as the rebuke went, there have been no accountability.

D-31). NEIL SIEGEL, assistant professor of law and political science at Duke University said, " the 5th Circuit is more out of

34

step than any Circuit in the Country when it comes to the Death
Penalty, you just don't see anything like this in any other Court.
The way they differ from other courts of appeals is the aggressiveness
and the willfulness in Capital cases."

E-31). JIM LIEBMAN, a professor at the Columbia University law
school said, " The 5th Circuit adopt the attitude, " We are not
going to look at these cases clearly and it's going to take a two-by-four
to the head before we are going to overturn these cases."

F-31) The Supreme Court's rebukes of the 5th Circuit began in 2001
with its second decision in the case of JOHNNY PAUL PENRY. The
Supreme Court ruled 6-3 that the 5th Circuit had failed to enforce the
spirit of a 1989 Supreme Court decision in the Penry Case, requiring
juries to consider evidence that could lead to a Life sentence
rather than death.

G-31). In February 2004 in the case of DELMA BANKS JR. the
Supreme Court chastised the 5th Circuit again. In a 7-2 ruling, the
Court said that prosecutors allowed two key witnesses to lie and did not
inform the defense that one witness was a paid police informant and the
other a two-time felon who testified in exchange for having an arson
charge against him dropped.

H-31). In June 2004, voting 6-3 in the case of ROBERT TENNARD, the
Supreme Court rejected a policy the 5th Circuit had developed in
reaction to the Penry decision. The Supreme Court said the policy
" has no foundation in the decisions of this Court."

I-31). Neil Siegel calls the 5th Circuit an " activist " Court.
" It's a refusal to be bound by the law when it's clear." he said.
" If that's not activism, I don't know what it is." He go on to say,
" Since the Supreme Court hears very few 5th Circuit decisions it's
clear the appeals court is ignoring the high courts instructions in
many other cases because the decisions probably won't be reviewed.

J-31). GEORGE KENDALL, a New York lawyer who represented Delma
Banks, said the 5th Circuit rejected " scores of appeals " that should
have been accepted, according to the Supreme Court's decision in the

35

Penry case, before the high Court got around to correcting the 5th Circuit in the Tennard case.

K-31). In a 2003 Capital Case that never reached the Supreme Court, 5th Circuit Judge Harold R. DeMoss Jr. dissenting from a ruling by the entire 18-Judge Court stating: " I am amazed that our en banc Court would have the audacity to turn around and reach the same result the Supreme Court just vacated."

L-31). The 5th Circuit's propensity to ignore the law culminated ( before continuing ) with the UnConstitutional murder via lethal injection of Cameron Todd Willingham. See www.innocenceproject.org/content /Cameron__Todd__Willingham__Posthumous__Pardon__Filing__Documents.php.

A-32). In light of the Supreme Court's knowledge that the 5th Circuit often defy their Court and the law they've done significantly less than their mortal best to discharge their oath of office. Judge's take an Oath to uphold the Constitution, however the Supreme Court's refusal to Supervise a rogue 5th Circuit is a Betrayal of the Constitution, their conduct falls below the standard established by law for the protection of others against the unreasonable risk of harm. Pence v. Ketchum, La., 326 So.2d 831, 836. The Supreme Court's negligence, that legal delinquency that resulted when they failed to exhibit the care which the Court ought to exhibit, whether it be slight, ordinary or great is front and center here, it is characterized chiefly by inadvertence, thoughtflessness, inattention, and the like, while " wantonness " or " recklessness " is characterized by the 5th Circuit's willfulness.

The Doctrine of negligence rests on the duty of every person to exercise due care in his conduct  toward others from which injury may result. ( Black's Law Dictionary/with Pronunciations/Fifth Edition). The Supreme Court's failure to perform a manifest duty in reckless disregard of the Consequences as affecting the life of Fields is Gross negligence the Supreme Court knew or should have known that in light of past evidence their conscious and voluntary decision not to supervise the 5th Circuit would likely result in grave injury to a death sentenced inmate. Glaab v. Caudill, Fla., App., 236 So.2d 180, 182, 183, 185. " That entire want of care which would raise belief that act or omission complained of was result of conscious

36

indifference to rights and welfare of persons affected by it. Claunch
v. Bennett, Tex. Civ. App., 395 S.W. 2d 719, 724; Snyder v. Jones,
Tex. Civ. App., 392 S.W. 2d 504, 505, 507. Indifference to present
legal duty and utter forgetfulness of legal obligations, so far as
other persons may be affected, and a manifestly smaller amount of
watchfulness and circumspection than the circumstances require of a
person of ordinary prudence." The Supreme Court, aware that Donald
Trump was going on a political killing spree on Federal Death Row,
combined with their knowledge that the 5th Circuit ignore the law
exposed Fields to hazardous negligence by not supervising the Court;
If the Supreme Court, as they do, consider the Death penalty
Constitutional, then the Court have a duty to make sure that the lower
Courts follow the law in regards to the Death penalty, and the
Supreme Court know, and continues to be aware that the 5th Circuit
does not follow the law, yet instead of making every Capital Case
that come out of that Circuit a priority in order to make sure that the
5th Circuit follow the law and the Constitution, the Supreme Court just
simply dispose of cases and the lives of the American people by simply
denying cert., most of the time without even an explination, thus
the Supreme Court is responsible for the 5th Circuit's negligence in
regards to Fields' Schmidt v. Martin, 212 Kan. 373, 510 P. 2d 1244,
1246.

37

THE SUPREME COURT'S FAILURE TO PROVIDE
PLAINTIFF WITH THE EQUAL PROTECTION OF
THE LAW HARMED PLAINTIFF

A-33). PLAINTIFF gave the Supreme Court  several chances to correct the 5th Circuit's gross negligence;  The Court denied cert. after the 5th Circuit Unconstitutionally denied Fields' direct appeal; Fields filed to the Supreme Court in January 2014 asking the Court to correct the 5th Circuits Unconstitutional actions; Fields filed to the Supreme Court again  in February 2014 asking the Court to correct the 5th Circuits Unconstitutional actions; In June 2014 the Supreme Court said that Fields " would have to wait until the 5th Circuit ruled on his C.O.A.; Fields filed in the Supreme Court again and on 8/15/2014 the Court told Fields that he would have to file in the lower Court; That same month the 5th Circuit denied C.O.A.; In June 2015 the Supreme Court denied cert.; Fields attempted to file in the Supreme Court again and the Court told him that he would have to file in the lower Court; Fields attempted to file in the District of Columbia and was told to file in the District of Incarceration; In May 2019 Fields filed an Original Petition in the Supreme Court again, and once again the Supreme Court denied cert.; Fields' persistent, active, sedulous, laborious, unremitting and untiring quest to get the Supreme Court to provide him with the equal protection of the law by forcing the 5th Circuit to abide by the law and take his evidence seriously is a Diligence of Extraordinary Prudence.

B-33). The Equal Protection Clause is that provision in the 14th Amendment to the United States Constitution which prohibits the government from denying to any person within its jurisdiction the equal protection of the laws. In re Adoption of Richardson, 251 C.A. 2d 222, 59 Cal. Rptr. 323, 334. The Supreme Court is acutely aware of the 5th Circuit " ignoring the law " and having a " troubling pattern " of denying appeals and despite this instead of " taking a closer look " at Fields attempt at cert., the Court simply disposed of Fields' case, his Constitutional Rights, and his life and liberty via their " shadow docket ", further harming the Plaintiff, the Supreme Court's direction to Fields to " wait until the 5th Circuit Rule ", to " File in the lower Courts ", and/or to " File in the District of Incarceration can't be reconciled with the leeway that the court grants the government.

38

C-33). On or about February 18, 2021 a U.S. House Judiciary subcommittee listened to evidence that " the brakes have truly come off " at the Supreme Court in regards to the Court directly enjoining government officials when the lower Courts refuse to do so; The Supreme Court:

* paved the way for the first federal executions in 17-years after the lower courts had repeatedly stopped them.

* permitted Trump to use military funds to cover his controversial border wall even though lower courts ruled that such repurposing of funds is unlawful.

* refused to stop a " pay to vote " law in Florida which a lower court called flagrantly unconstitutional.

* Stayed 22 of 34 lower court orders that was adverse to Trump.

While the Supreme Court claims to be a " court of review, not of first review," yet in recent years and under the Trump administration most recently the Court, while telling people like the plaintiff that he will have to "  file in the lower courts, " have done the exact opposite to the Department of Justice. Last September 2020, then-acting U.S. Solicitor General Jeffrey Wall defended his office's frequent requests for emergency action by the Supreme Court often in cases where District Courts issued nationwide injunctions against Trump Administration policies, stating, " I don't think anybody is defending the current state of affairs as a good or stable one." Which brings us back to the issue at hand. When the Supreme Court will take up a case about a " baker not wanting to bake a cake for a gay couple " or to allow Trump to unlawfully repurpose funds to build a controversial border wall, but won't take up a case where an American citizen's life is on the line after the Court bypassed the lower courts to allow Trump to go on his politically motivated execution/murder spree then we agree with then-acting Solicitor General Jeffrey  Wall when he say that the " current state of affairs is not a good or stable one." This was further highlighted in the United States v. Dustin John Higgs, 592 U.S.__(2021)(Justice Sotomayor, dissenting) where the Supreme Court

39

allowed the government to bypass the lower courts and kill thirteen people in six months " consistently rejecting inmates' credible claims for relief, even intervening to lift stays of execution that the lower courts put in place, thereby ensuring the prisoners' challenges would never receive a meaningful airing." Three of those executed was out of Texas and the 5th Circuit; Christopher Vialva, Brandon Bernard and Alfred Bourgeois, the Plaintiff was on Trump's list to be the 4th person murdered via lethal injection from the 5th Circuit. It's traumatizing, especially in light of the fact that Vialva and Bernard came out of the exact same District Court with the same Judge as Fields; They also had the misfortune of having racist 5th Circuit Judge Edith Jones on their case as well, this is really disturbing in light of the dissent where Judge Sotomayor point out that Bernard and Bourgeois, among others had " credible claims for relief," the Supreme Court, acting outside of its normal course of duty was poised to let any and everybody die whom the Trump administration gave a date, regardless of whether they had " credible claims for relief " or not. And as Justice Sotomayor concluded those executions may have been illegal. Which brings us to " Equal protection "; How is it that the Department of Justice (DOJ) get to bypass the " lower courts " and kill prisoners with meritorious issues, but this Court Continuously tell Plaintiff that he have to " file in the lower courts " first, even though the Supreme Court know that the 5th Circuit " ignore the law " and have a " troubling pattern " of denying appeals?

---

The Equal Protection Clause grants to all Americans the " right to be free from Invidious discrimination in statutory classifications and other government activity." Harris v. McRae, 448 U.S. 279, 322, 100 S.Ct. 2671, 65 L.Ed. 2d 784 (1980) " Equal Protection principles command that No State or the Federal Government " Shall deny any person within its jurisdiction the equal protection of the laws." Fields filed an Original petition to the Supreme Court in May 2019 and the Court promptly disposed of it via its " shadow docket " although the " All Writs Act " 28 U.S.C. § 1651 empowers federal courts to fashion " extraordinary remedies " when the need arises. Fields had put forth all of the issues herein where the 5th Circuit ignored the law and/or used an unreasonable determination of the facts to deny his appeals,

40

and even though the Supreme Court know the 5th Circuit's track record and had the Authority to correct a fundamental miscarriage of Justice, the Court chose to " turn a blind eye " to injustice and allowed the Plaintiff to continue suffering, in violation of the United States Constitution, while all the time holding a different standard for the DOJ, allowing them access to the Court that they willfully denied the Plaintiff access to; The very real fact that Fields was harmed because of the Supreme Court's discriminatory practices can't be denied.

41

DONALD J. TRUMP, CONGRESSIONAL LAWMAKERS,
JUDGE EDITH JONES AND THE 5th CIRCUIT COURT
OF APPEALS, AND THE JUDGES ON THE SUPREME
COURT ENTERED INTO A CONTRACT WITH THE PLAINTIFF
WHEN THEY TOOK THE OATH TO UPHOLD THE CONSTITUTION,
AND ALL DEFENDANTS WILLFULY, DELIBERATELY,
KNOWINGLY AND INTENTIONALLY BREACHED AND/OR
VIOLATED THAT CONTRACT.

A-34). " I do solemnly swear..." to " preserve, protect and defend the Constitution of the United States."

B-34). When the defendant's took the oath of office they each entered into a constructive contract with each and every American Citizen; The " Contract ", implied in law placed an obligation on the defendants created by law for reasons of justice without regard to expressions of assent by either words or acts. Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 191 A.2d 483, 489. However, that contract was violated when:

(1). The 5th Circuit refused to follow the law, and in essence, the Constitution.

(2). The 5th Circuit refused to provide the Plaintiff with the Equal Protection of the law.

(3). The 5th Circuit's refusal to follow the law harmed Plaintiff by denying relief that would have spared him Donald Trump's political wrath.

(4). The Supreme Court refused to supervise the 5th Circuit and propel them to follow the law while knowing that the 5th Circuit often defy and/or ignore the law.

(5). The Supreme Court refused to provide the Plaintiff with the Equal Protection of the law.

42

(6). Donald J. Trump sought to murder the Plaintiff for writing a book and a movie about him, in violation of the law and the United States Constitution.

(7). Donald Trump started the Federal Death Penalty back up after a 17-year hiatus intent on murdering the Plaintiff while pardoning all of his friends for their criminal acts.

(8) Congress refused to hold Donald Trump accountable for violating his Oath of Office.

(9). Congress supported Donald Trump's political killing spree on Federal Death Row, denying Plaintiff the Equal Protection of the laws that they provided Donald Trump's friends that were being pardoned for their criminal acts.

(10). Congress support laws that separate the Plaintiff from his loved one's and support laws that allowed Donald Trump to Attempt to murder the Plaintiff via lethal injection while refusing to hold Donald Trump accountable for his own criminal acts because " He is one of " them.

---

C-34). The defendant's actions encompass a broad range of Unconstitutional transgressions, their unreasonable actions were a flagrant disregard of the facts and were without determining principle. Elwood Investors Co. v. Behme, 79 Misc. 2d 910, 361 N.Y.S. 2d 488, 492; The 5th Circuit's refusal to follow the law and the Supreme Court's neglect of duty can't be reconciled with their Oath of office, the United States Constitution was created to prevent injustice, not as an excuse for those in power to do harm in its honor. And while Donald Trump and 5th Circuit Judge Edith Jones' willful and malicious injury to the Plaintiff involve hatred " because Fields is black " ( Judge Edith Jones ) and " because Fields opposed  Donald Trump " ( Donald Trump/William Barr),, the remaining Defendant's willful and malicious Injury to the Plaintiff

43

arises from a willful disregard of what one knows to be his duty. In re Wernecke, D.C.N.Y., 1 F. Supp. 127, 168; The Supreme Court has a duty to afford Fields the Equal protection of the law when the 5th Circuit fail to do so; Congress had a duty to hold Donald Trump accountable for his breach and/or violation of Oath even before Donald Trump put the Plaintiff in his cross hairs, and because they didn't it arises to the level of negligence; the defendant's failure to perform a duty the law imposes on them to assure that American Citizens, such as the Plaintiff will be free from Cruel and Unusual Punishments completely destroyed the real purpose and object of Justice. Donald Trump's actions were done on will alone; absolutely in power, capriciously; tyrannical; despotic; Corneil v. Swisher County, Tex. Civ. App.., 78 S.W.2d 1072, 1074. The remaining defendants acted in bad faith and failure to exercise honest judgment, this arbitrary act was performed without adequate determination of principle and one not founded in the nature of things. Huey v. Davis, Tex. Civ. App., 556 S.W.2d 860, 865; Article II, of the United States Constitution bound Donald Trump to truthfully and faithfully perform his duties; Article VI, of the United States Constitution bound the 5th Circuit Judges, the Supreme Court Judges and Congress to truthfully and faithfully perform their duties, and because that Oath is a contract with the American people the defendants had a contractual obligation to make sure that the Plaintiff was afforded the Equal Protection of the laws that they swore to uphold; Donald Trump didn't have the right to terrorize the Plaintiff on a politically motivated killing spree designed for his independent interest; Congress didn't have the right to allow partisan politics to get in their way of holding Donald Trump accountable for his Unconstitutional and criminal actions; Judge Edith Jones and the 5th Circuit didn't have the right to discriminate against the Plaintiff and deny him relief because he's " black ", he's a " black male ", and he maintains his innocence; And the Supreme Court didn't have the right to deny the Plaintiff the Equal protection of the laws by willfuly neglecting to hold the 5th Circuit accountable for ignoring the law. As such the defendant's breached and violated their contract with the Plaintiff and because of that breach the Plaintiff is severely and unreconcilably Unconstitutionally harmed.

44

IMMUNITY...IN ANY FORM IS AGAINST THE
CONSTITUTIONAL PROSCRIPTION THAT
<u>NO ONE IS ABOVE THE LAW</u>: CONGRESS, THE
5TH CIRCUIT, THE SUPREME COURT AND OTHER
GOVERNMENT AGENCIES THAT RELY ON "IMMUNITY"
AFTER HARMING THE AMERICAN PEOPLE HAVE
INTENTIONALLY, DELIBERATELY, WILLFULY AND
KNOWINGLY MADE THEMSELVES SUPERIOR TO THE LAW
IN VIOLATION OF THE UNITED   STATES
<u>CONSTITUTION</u>.

American Jurisprudence have always stood on the Constitutional principle that NO ONE IS ABOVE THE LAW. Recently in Trump v. Vance, 207 L.Ed. 2d 907,__U.S.__, the Supreme Court reiterated that fact, yet the governments insistence that the United States government can't be sued without their consent unequivocally places them ABOVE THE LAW. ( See FEDERAL TORT CLAIMS ACT- Black's law Dictionary (with pronunciations) Fifth Edition ). When any branch of the government have a legal duty from defendant to plaintiff and that duty is breached and as a direct result the Plaintiff is harmed the government is liable. Joseph v. Hustad Corp., 454 P.2d 916, 918. Claiming Immunity amid a willful breach of duty is a violation of the United States Constitution and makes the culpable party superior to the law. " Every person who under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.A. § 1983. Plaintiff is setting forth several issues that are Tortious and is the but-for cause of the harm that Plaintiff suffers; claiming immunity, whether Absolute or otherwise places the defendants ABOVE THE LAW allowing them to enjoy an Unconstitutional priviledge that other American Citizens don't enjoy and it places the defendants in a position to damage, harm, and inflict cruel and unusual punishments on the American people with impunity. For the reasons laid out above and throughout this petition the defendants should be held liable. Nowhere

45

in the Constitution do it say that Government Officials " Shall " be immune from money damages; Frankly it say just the opposite: " All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States ..." and shall not be denied " the Equal protection of the laws." (Amendment XIV [1868], meaning, if congress and/or the courts place Immunity on themselves then every American Citizen shall enjoy the same Immunity; If not, then the law must be struck down as Unconstitutional; Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed 60 (1803). Immunity, whether it's Absolute, Immunity from punitive damages and/or Qualified Immunity for only a certain class of people because of who, or where they work is Unconstitutional. What it means is that you can neglect your duty, inflict harm and then be exempt from the punishment that you fear most, that can't be reconciled with a Constitution that affords every American Citizen the Equal Protection of the laws ( regardless of what position you hold in society ). The defendants intentionally, willfuly, deliberately and knowingly harmed the Plaintiff with and without malice aforethought and the defendants get to put a cap on Plaintiff's damages? That's the equivalent of a Judge standing in Judgment of himself, it's Unconstitutional on every level, no one is Superior to the law; NO ONE IS ABOVE THE LAW...even the defendants in this cause of action.

46

V.

## PRAYER FOR RELIEF

. Plaintiff Incorporate by reference the PRAYER FOR RELIEF in the Original Complaint.

The Plaintiff Respectfully pray that the Court Issue an Order declaring that the Defendants actions violate the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and award money damages to the tune of ONE BILLION DOLLARS, or in the alternative Plaintiff pray that the court set these proceedings for a jury trial.

Dated March 31, 2021

Respectfully Submitted :
Sherman Lamont Fields
#15651-180
USP Terre Haute
P.O. Box 33
Terre Haute, Indiana
       47808
       Pro Se.

Exhibit "1"

Defendant-Appellant SHERMAN LAMONT FIELDS, through his undersigned counsel, hereby moves to recuse Hon. Edith H. Jones, Circuit Judge, from any further participation in this appeal pursuant to 28 U.S.C. § 455, the Fifth Amendment to the U.S. Constitution, and Canon 3C of the Code of Conduct for United States Judges as incorporated in this Court's local rules.

## PRELIMINARY STATEMENT

Defendant-Appellant Sherman Lamont Fields ("Fields") brings this motion for recusal based on facts set forth in a complaint for judicial misconduct concerning remarks by Circuit Judge Jones during a public lecture entitled "Federal Death Penalty Review" at the University of Pennsylvania School of Law on February 20, 2013, which was supported by several sworn affidavits by witnesses in attendance during that lecture and filed by thirteen separate complainants, including representatives of the Mexican Capital Legal Assistance Program, the NAACP, and several distinguished legal ethics professors, among others ("Complaint"). Ex. A.[1] The allegations in the Complaint, if true, undermine Judge Jones' ability to impartially determine Fields' appeal should she be assigned to any further proceedings in this matter.

In the Complaint, Judge Jones is alleged to have made public remarks which demonstrate personal biases against racial minorities and the mentally disabled. Her alleged comments evince her insensitivity toward the justification

---

[1]   All references to "Ex." herein refer to the Exhibits to the Declaration of Jeffrey Ellis In Support of Defendant-Appellant Sherman Lamont Fields' Motion to Recuse the Honorable Edith H. Jones, dated February 25, 2014.

# No. 13-70025

## IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

- against -

SHERMAN LAMONT FIELDS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION (W-09-CV-009, W-01-CR-164)

## DEFENDANT-APPELLANT SHERMAN LAMONT FIELDS' MOTION TO RECUSE THE HONORABLE EDITH H. JONES

### THIS IS A CAPITAL CASE

JEFFREY ELLIS
OREGON CAPITAL RESOURCE CENTER
621 SW Morrison St., Suite 1025
Portland, OR  97205
(206) 218-7076

PETER J. ISAJIW
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
(212) 504-6000

*Attorneys for Defendant-Appellant
Sherman Lamont Fields*

and administration of capital punishment and, specifically, cast doubt on her ability to impartially apply controlling legal precedent with respect to constitutional claims brought by those on death row who have challenged their convictions and death sentences on grounds of actual innocence or mental disability – like Fields has done. The Complaint's allegations, substantiated by detailed affidavits sworn by disinterested witnesses, create the appearance of partiality, if not outright bias, against Fields, an African American defendant challenging his conviction and death sentence based on claims of actual innocence and mental illness.

## STATEMENT OF FACTS

### A.   Procedural History

In January 2004, Fields was convicted of escape and murder, among other counts, and was subsequently sentenced to death. Brief for Defendant-Appellant Sherman Lamont Fields, No. 13-70025 (Dkt. No. 00512440612) ("Br.")[2], at 4. In January 2009, Fields filed a motion for a new trial and to vacate his conviction and death sentence pursuant to 28 U.S.C. § 2255, and amended his motion in April 2010. *Id.* at 5. The District Court denied Fields' motion and also denied a subsequent motion for reconsideration. *Id.* at 6.

On August 1, 2013, Fields timely filed a notice of appeal of the District Court's denial of Fields' § 2255 motion to this Court. Br. at 6; Dkt. No. 00512335473. On November 13, 2013, Fields filed a motion seeking a Certificate of Appealability and a brief in support thereof. Dkt. Nos. 00512440609 (Motion),

---

[2]   All "Br. at ___" references are to the physical pages of the brief, not the sequential pagination assigned by the ECF system.

00512440612 (Brief). This motion is still pending and has not been fully briefed. While Fields does not know whether Circuit Judge Jones will be assigned to the panel that will decide Fields' appeal, Judge Jones has already participated in these proceedings. *See* Dkt. No. 512499350 (Jan. 14, 2014 Order).

## B.    Fields' Background and Relevant Social History

Fields has been on death row since his conviction in 2004. He is African American and was born into a poor family in Waco, Texas. Br. at 7. His family had been victimized by racial intimidation and animus for generations, enduring brutal mistreatment during a period of intense racial violence in central Texas. *Id.* at 7-9. Fields' upbringing was characterized by shocking loss, including the violent deaths of several close friends and family members. *Id.* at 9-12. Complicating his profoundly tragic upbringing, and likely as a result of it, Fields was diagnosed with severe Posttraumatic Stress Disorder ("PTSD") and atypical bipolar disorder as a teenager, and is prone to paranoia and delusions. *Id.* at 11-12. Fields has suffered from these conditions throughout his adult life, including during his trial and subsequent proceedings. *Id.* Fields' § 2255 motion and present appeal asserts, *inter alia,* that he was denied his constitutional right to a fair trial because the District Court permitted Fields to represent himself despite his incompetence resulting from his mental illness. *Id.* at 12-14. Additionally, Fields contests his conviction on the ground that he is actually innocent of the crimes for which he was convicted. *Id.* at 121-30.

C.  The Complaint For Judicial Misconduct Alleged Against Circuit Judge Jones

As alleged in the Complaint, on February 20, 2013, Judge Jones gave a public lecture at the University of Pennsylvania School of Law entitled "Federal Death Penalty Review", which was ostensibly an opportunity to "discuss federal death penalty review through the perspective of a federal judge." Ex. A at 1 n.2; Ex. A, Bookman Aff. ¶ 3. Judge Jones's lecture discussed several topics reflecting a bias against certain racial groups. Judge Jones allegedly stated:

> "[C]ertain racial groups like African Americans and Hispanics are predisposed to crime" and "'prone' to commit acts of violence." She made "generalized and stereotypical comments about racial groups and their 'criminal tendencies.'" Judge Jones stated that "race" was merely a "red herring" "thrown up by opponents of capital punishment," and that no case had ever been made for "systemic racism." She also asserted that "certain systemic classes of crimes" exist and that "certain racial groups commit more of these crimes than others." She said that "sadly some groups seem to commit more heinous crimes than others." When asked to explain her remarks, she stated that there was "no arguing" that "Blacks and Hispanics" outnumber "Anglos" on death row and "sadly" it was a "statistical fact" that people "from these racial groups get involved in more violent crime." By way of example, she asserted as a "fact" that "a lot of Hispanic people are involved in drug trafficking," which itself "involved a lot of violent crime." She "dismissed race as a legitimate concern in how the death penalty was administered". . . . During the question-answer portion of the program, Judge Jones "lost her composure" to an extent that "the host of the program ended the program abruptly". . . .

Ex. A at 3 (citations omitted).

-4-

In addition to these racially charged remarks, Judge Jones allegedly made certain derogatory comments which demonstrated her lack of partiality with respect to capital defendants who claim they were unlawfully convicted as a result of mental disabilities. According to the Complaint, Judge Jones

> characterized capital defendants' assertions of "mental retardation" as "red herrings." She stated that she believes it is a disservice to the "mentally retarded" to exempt them from the death sentence, and "expressed disgust at the use of mental retardation as a defense in capital cases." She consistently asserted that the manner in which these defendants committed their crimes ... proved that they were not "mentally retarded." As one audience member stated, "in describing ... what Judge Jones said about these cases, I am not able to capture the complete outrage she expressed over the crimes or the disgust she evinced over the defenses raised, particularly by the defendants who claimed to be mentally retarded".... Judge Jones's disgust at how these defendants were "using mental retardation" was very evident and very disconcerting.

*Id.* at 5 (citations & footnotes omitted). Judge Jones also criticized the U.S. Supreme Court's death penalty jurisprudence, specifically its decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that it was unconstitutional to execute the mentally retarded. *Id.* at 1, 5 n.11.

Judge Jones allegedly doubted that innocent defendants would ever be sentenced to death, and, therefore, convicted defendants who claim innocence were likely lying. *See* Ex. A at 6. According to the Complaint, Judge Jones was "very dismissive of claims of innocence. She did not take seriously the possibility that innocent people had been sentenced to death." *Id.* "'[R]eversals of those who

were allegedly innocent were really based on "technicalities", not innocence.'" *Id.* (citation omitted).

Moreover, Judge Jones allegedly "advocated her personal religious views as a basis for justifying the death penalty." Ex. A at 7. According to the Complaint, she stated that "'a killer is only likely to make peace with God and the victim's family in that moment when the killer faces imminent execution, recognizing that he or she is about to face God's judgment.'" *Id.* (citation omitted). According to Judge Jones, she was inspired to adopt this philosophy after reading an online article called "Hanging Concentrates the Mind," in a Catholic magazine titled *Crisis. Id.* That article, which purports to summarize the Vatican's position on capital punishment, concludes by observing that "'the coercive power of legitimate human authority' has its roots in 'the *sources of revelation and traditional doctrine*' ... [which] have 'a general and abiding validity.'" Ex. B at 3 (citation omitted).

The Complaint alleges that Judge Jones violated Canons 1 through 4 of the Code of Conduct for United States Judges, which, among other things, require judges to "'uphold the integrity and independence of the judiciary'" (Canon 1), "'avoid impropriety and the appearance of impropriety in all activities'", "'act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary'" (Canon 2), be "'patient, dignified, respectful, and courteous'" and avoid comments on "'pending or impending'" matters (Canon 3), and avoid participating "'in extrajudicial activities that detract from the dignity of

-6-

the judge's office or reflect adversely on the judge's impartiality . . .'" (Canon 4). Ex. A at 7-10 (*citing* Code of Conduct for United States Judges, Canons 1-4).[3] These allegations are supported by affidavits of legal ethics experts, who concluded that Judge Jones violated the canons of judicial conduct, including Canon 3. *See* Ex. A, McCormack Aff. ¶ 17 ("[I]t is my opinion that Judge Jones violated the ethical standards applicable to federal judges under the Code of Conduct for United States Judges); *see also* Ex. A, Hardwick Aff. ¶¶ 12-55 (concluding that Judge Jones would be sanctioned for violations of Texas rules of judicial and professional ethics).

The Chief Judge of the Fifth Circuit requested a transfer of the proceedings against Judge Jones, and on or around June 12, 2013, Chief Justice John Roberts granted this request and transferred the proceedings to the Judicial Council of the District of Columbia Circuit. *See* Ex. C. To the best of Fields' and his undersigned counsel's knowledge, the allegations against Judge Jones are pending and no findings of fact have issued.

Judge Jones' remarks and the allegations set forth in the Complaint were widely reported by respected news organizations. The *New York Times* quoted a prominent legal ethics expert who opined that "'[i]f I were a parent of a black with borderline IQ accused in a capital case, would I be distressed in knowing that Judge Jones was sitting on my case? . . . Yes, I would. She seems to have made up her mind on these issues. ***She is slanted. That is the whole point of***

---

[3] http://www.uscourts.gov/RulesAndPolicies/CodesOfConduct/CodeConduct United States Judges.aspx.

*the impartiality requirement.*'" Ex. D (citation omitted; emphasis added). In the same article, another respected legal ethics expert suggested that if Judge Jones "really did say that death penalties serve the condemned by forcing them to face God . . . 'during sentencing, that sentence would be vacated . . . . *It suggests that she believes she is helping the accused by giving a death sentence.* That is totally inappropriate.'" *Id.* (citation omitted; emphasis added); *see also* Ex. E; Ex. F.

## ARGUMENT

A judge must recuse herself "in any proceeding in which [the judge's] impartiality might reasonably be questioned,"[4] 28 U.S.C. § 455(a), or if the judge "has a personal bias or prejudice concerning a party. . . ." 28 U.S.C. § 455(b)(1). Section 455(a) is interpreted under an objective standard, and a judge must recuse herself if "a reasonable and objective person, knowing all of the facts would harbor doubts concerning the judge's partiality." *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995); *see Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 860 (1988) ("'The goal of section 455(a) is to avoid even the appearance of partiality'") (citation omitted); *United States v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993)

---

[4]    Canon 3C of the Code of Conduct for United States Judges, as adopted by the Judicial Conference of the United States, incorporates § 455. In the "Other Internal Operating Procedures" of this Court's local rules, the "Recusal or Disqualification of Judges" subsection (a) states, in relevant part, "Judges must disqualify themselves under circumstances set forth in 28 U.S.C. § 455 or in accordance with Canon 3C, Code of Conduct for United States Judges as adopted by the Judicial Conference of the United States." Rules and Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit, Other Internal Operating Procedures, http://www.ca5.uscourts.gov/clerk/docs/5thcir-iop.pdf. As such, a violation of Canon 3C is a separate ground for recusal. A legal ethics expert who submitted an affidavit in support of the Complaint concluded that Judge Jones violated Canon 3. Ex. A, McCormack Aff. ¶ 17.

(requiring recusal as a result of judge's public remarks, because the judge "deliberately ma[de] the choice to appear in such a forum at a sensitive time to deliver strong views on matters which were likely to be ongoing before him", creating the appearance of bias). Recusal "must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the facts and circumstances of the particular claim." *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999). If close, the balance must tip in favor of removal. *See Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484-85 (5th Cir. 2003).

A criminal defendant's right to an impartial judiciary is embedded in the Due Process Clause of the Fifth Amendment to the U.S. Constitution, which mandates a "fair trial in a fair tribunal" for every defendant. *In re Murchison*, 349 U.S. 133, 136 (1955). A judge violates a defendant's due process rights if she is biased against the defendant. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). And even if a judge has no actual bias, but a bias may be apparent, a judge must recuse to avoid offending due process. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986); *United States v. Couch*, 896 F.2d 78, 82 (5th Cir. 1990) (Due process "requires a judge to step aside when a reasonable judge would find it necessary to do so").

Circuit Judge Jones must recuse herself because her impartiality might reasonably be questioned as a result of her alleged public remarks. These actual or apparent biases bear directly on the circumstances of Fields' case.

First, Judge Jones' comments suggest that she lacks partiality with respect to matters of race. Specifically, she made derogatory statements

concerning African Americans and Hispanics by making the unfounded and offensive generalization that such racial groups were "'predisposed to crime'" and "'"prone" to commit acts of violence.'" Ex. A at 3 (citation omitted). Judge Jones further opined that "'some groups seem to commit more heinous crimes than others,'" and "'dismissed race as a legitimate concern in how the death penalty was administered.'" *Id.* (citation omitted). Fields is an African American whose family has long been victimized by racial antagonism and violence, and Fields claims that this victimization and racial violence, among many other factors, contributed to his mental illness and inability to competently represent himself during the guilt phase of trial. Br. at 7-12, 94-107. Fields also claims that he did not commit the violent crimes for which he was convicted and sentenced to death and that his trial counsel failed to effectively challenge critical pseudo-scientific "expert" testimony concerning Fields' risk of "future dangerousness." *Id.* at 121-44. Should Judge Jones participate in this appeal, her comments that members of certain racial groups – including African Americans such as Fields – are prone to violence would, at the very least, create the appearance of partiality on matters of race and future dangerousness which require recusal.

Second, if her remarks as alleged are true, Judge Jones appears to hold a bias against death row inmates who have challenged their convictions on the basis of mental disabilities. Judge Jones "stated that she believes it is a disservice to the 'mentally retarded' to exempt them from the death sentence, and 'expressed disgust at the use of mental retardation as a defense in capital cases.'" Ex. A at 5 (citation omitted). She insisted that "the manner in which these defendants committed their crimes" proved that they were not, in fact, mentally disabled. *Id.*

Those in the audience at Judge Jones' lecture described "'the disgust [Judge Jones] evinced over the defenses raised, particularly by the defendants who claimed to be mentally retarded.'" *Id.* These alleged biases plainly bear on Fields' present appeal. In his motion for a Certificate of Appealability, Fields argues that he was deprived of his constitutional rights as a result of the District Court's decision to allow Fields to represent himself at trial despite his debilitating mental illnesses. Br. at 94-107. Fields is bipolar and suffers from severe paranoid delusions and PTSD. *Id.* at 11. These conditions prohibited Fields from adequately representing himself at trial, and thus the District Court committed reversible error in allowing Fields to proceed *pro se. Id.* at 94-107. Judge Jones' well-documented skepticism of death row inmates who have challenged their convictions and sentences as a result of mental deficiencies therefore disqualifies her from participating in any further proceedings relating to Fields' appeal.

Third, the Complaint alleges that Judge Jones was "'very dismissive of claims of innocence. She did not take seriously the possibility that innocent people had been sentenced to death.'" Ex. A at 6. Further, Judge Jones "'said that reversals of those who were allegedly innocent were really based on "technicalities", not innocence.'" *Id.* (citation omitted). Effectively, Judge Jones has already passed judgment on Fields because in his § 2255 motion and his present appeal, Fields vigorously argues that he is actually innocent of the crimes for which he was convicted, a position he has consistently maintained since his trial. Br. at 121-30. Thus, Judge Jones could not impartially render judgment on Fields' appeal.

Fourth, Judge Jones allegedly "advocated her personal religious views as a basis for justifying the death penalty." Ex. A at 7. She is alleged to have stated that "'a killer is only likely to make peace with God and the victim's family in that moment when the killer faces imminent execution, recognizing that he or she is about to face God's judgment.'" *Id.* Judge Jones allegedly "'talked about how the imminent prospect of execution forced the criminal to confront his deed, and she said this as justification for the death penalty." *Id.* This apparent appeal to religious authority for a judicial matter as serious as the federal government's attempt to take the life of one of its citizens clearly creates a situation where Judge Jones' impartiality could reasonably be questioned.

Fifth, Judge Jones sharply criticized the Supreme Court's death penalty jurisprudence, observing that the Court's decision in *Atkins* – in which the Court held that it was unconstitutional to execute the mentally retarded – was "ill-advised" and created a "'slippery slope'" by which a defendant's intelligence must be considered under certain circumstances. Ex. A at 1; Ex. A, Bookman Aff. ¶¶ 20-21. According to Judge Jones, the Supreme Court has "micromanaged" capital punishment, and she speculated that "the Supreme Court's next attempt at meddling with the death penalty will come by 'back-dooring' through the *Martinez* case the right to counsel in post-conviction proceedings. [Judge Jones] seemed to think that this would be a travesty."[5] Ex. A, Bookman Aff. ¶ 21. These views do not comport with the fair administration of capital punishment under the Constitution, which affords, among other things, certain procedural protections to

---

[5]  *See Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).

-12-

the accused as well as a right to a fair determination of punishment for the convicted. However, according to Judge Jones, the imposition and effectiveness of the death penalty is justified through extralegal means – her personal religious philosophy. *See* Ex. A at 7. Judge Jones' disdain for the Supreme Court's capital punishment jurisprudence raises doubts that she could impartially apply controlling authority. Fields challenges both his conviction and sentence pursuant to bedrock principles of Constitutional law. Judge Jones' participation in Fields' appeal would result in an unconstitutionally biased determination and undermine public confidence in the judiciary.

Judge Jones' public comments demonstrate a judicial bias against Fields and those similarly situated. Judge Jones' impartiality "might reasonably be questioned" and it is reasonable to infer her bias against Fields here. *See Cooley*, 1 F.3d at 992, 994. Judge Jones' participation in Fields' appeal would deprive him of his Fifth Amendment rights to a fair proceeding. Accordingly, Judge Jones should be recused from any further proceedings in connection with Fields' appeal.

-13-

## CONCLUSION

For the foregoing reasons, Fields respectfully requests that this Court grant his motion to recuse the Honorable Edith H. Jones.

Dated:    February 25, 2014

Respectfully Submitted.

By: /s/ Jeffrey Ellis
    Jeffrey Ellis

Oregon Capital Resource Center
621 SW Morrison St., Suite 1025
Portland, OR  97205
Telephone:  (206) 218-7076
Email:        JeffreyErwinEllis@gmail.com

Peter J. Isajiw
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
E-mail:       Peter.Isajiw@cwt.com

*Attorneys for Mr. Fields*

-14-

## CERTIFICATE OF CONFERENCE

I hereby certify that on February 18, 2014, counsel for the Government advised me that the Government opposes the relief requested in this Motion.

Dated:    February 25, 2014


/s/ Jeffrey Ellis
Jeffrey Ellis
Peter J. Isajiw

*Attorneys for Mr. Fields*

## CERTIFICATE FOR ECF PLEADINGS

I hereby certify that: (1) required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:    February 25, 2014

/s/ Jeffrey Ellis
Jeffrey Ellis

-16-

Case 1:20-cv-02699-JEB   Document 19   Filed 06/07/21   Page 68 of 68

# 156SI-180
USP Terre Haute
P.O. Box 33
Terre Haute, IN
                47808

Special mail
28 C.F.R. § 540.18



UNITED STATES POSTAL SERVICE®
USPS TRACKING #

9114 9022 0078 9080 3710 56

Legal mail

THE HONORABLE
JAMES E. BOASBERG
U.S. District Court
For the District of Columbia
   Office of the Clerk
E. Barrett Prettyman Courthouse
   Washington, DC 20001